Good morning, Your Honors. Ethan Ballot for Appellant. Watch my clock and I'm going to try to save three. In exhorting the jury to acquit in his failed defense of Tom Robinson, Atticus Finch observed that the quality of justice depended on the quality of each juror's judgment. Counsel, can we cut to the chase? What specifically in the closing of the prosecutor's hearing was misconduct or would cause us to have to reverse? Well, the unstated basis for the quote or what I was referring to is that there's two things that trial by jury ensures, and I'll get to your answer briefly if I may, Your Honor. That the two things you have to be an honest prosecutor and need a presentation of evidence subject to rational assessment, not emotions. Trial by emotion, trial by mob is decidedly the antithesis of emotion. So in answer to your question, Judge Graber. Trial hardly is comparable to the one in Alabama in the novel you're referring to. Could you answer Judge Graber's question, please? Yes, Your Honor. One of the things they did was create, which was thoroughly irrelevant, this idea that the scheme of turnstile jumping on Spirit Airlines was dangerous. They referred to it as serious danger repeatedly, both in opening summation and summation. They now tell this court that the danger they conjured was limited and qualified, but that's one, not what they told the jury, and two, thoroughly unrelated to a fraud scheme. Counsel, can I, as you get into the rest of it, it's my understanding that none of this was objected to at the trial, so we're reviewing for plain error, are we not? We are, and I'll make it even tougher on myself. What I'm going to argue today is the due process issue that the Supreme Court reaffirmed in White last year. I'm going to argue that the four species of misconduct and misleading statements by the prosecutor... Okay, point me exactly to the places in the record that are of concern to you. Well, it would start with the opening statement. I'll start with ER 192 and 194. It was of concern that when they introduced Ms. Ferguson, what the prosecutor says is as follows, and this is where his criminal partner and co-defendant, Monique Ferguson, steps in. She was in on the game. She had taken a few free flights on spirit, posing as an airline employee, despite never working at the airline industry or working for any airport or airline at the time. Let me give you the second quote before I unmask it. In committing the fraud, this is 194, the second site, the two defendants posed as airline crew. They sold Mesa employees' identities to third parties. They violated air support security procedures, and they endangered the jobs of employees whose identities they stole, and they defrauded the airline of hundreds of thousands of dollars. Counsel, can I ask you a question about what you just read? That's from the opening? Correct. I didn't read your brief as challenging the opening. No, no, I'm asking you a question about where it started, and this is deceit. This is deceit. But you didn't raise that specific statement as part of your argument in the opening brief. Am I right about that? Yes, and we're not relying on it as an individual claim for relief. But your question was where did we begin? We began at the beginning. They started with lying about the facts, and I think that should concern the court. I didn't hear anything in there that sounds like it was disconnected from the facts. I thought your point about closing was physical dangers. It is. I was back. Counsel, there was not a whisper of that in the opening that you just cited, and what we're looking for is something that should have led a district judge to jump out of his or her chair and interrupt a closing when there's no objection from the defense. I would disagree with that in one way, and that's why I said I'm raising the due process question. And I understand that plain errors is what applies here, because there wasn't a peep, as the court has observed. What I'm arguing here is that plain error is decided at the time of appeal, which is Henderson, and that's the Supreme Court. And when we look at this record and we can identify misleading prejudicial statements that were scripted, that were not close to the truth, that were unfair, our to say they didn't give her a fair trial. They cheated. They broke the rules in a meaningful way that this court should correct, because we only have faith in the jury system to make rational assessments of facts when the prosecutor is honest and doesn't inflame passion. So on the passion piece, in a fraud case, saying that she... Well, I'm hearing a lot of passion from you, but the only – maybe I'm missing something, but I'm looking at ER 655, and this seemed to me to be the place where there's mention of danger, but it's in passing. It's a short paragraph. This is not a complicated case. I think we did it in two and a half days. It was straightforward. They knew what they were doing. They did it anyway. And in doing so, they defrauded at least two airlines. They jeopardized the sort of employment of other individuals by using – fraudulently using their identification. And frankly, they violated just airline security. That's true. And this is the part you don't think was proper, and endangered the public in posing as people they were not. That is all I could find, pretty much. Is that about it? Well, no, I don't think that's it. I think where we sort of differ, Your Honor, is what Monique Ferguson did was flew once to Costa Rica with her own passport in her name, with a ticket in her name. It didn't say she was a pilot. She didn't have an ID. This is a year before anything happens with any ID in this case. So what Monique Ferguson did is she paid Hubbard Bell $350. For that, she flew to Costa Rica. She didn't take a few trips. She didn't fly for free. She didn't pose as a pilot. Full stop. Those are facts that are not disputed. The government told the jury other facts. And our argument is they're not allowed to do that. They're not allowed to mislead. She didn't say she was – She made some of the false badges, correct? No, that's not correct. What the evidence shows is – and you take a look at by Felix, the co-defendant who's not here today. And then she sent back the identical ones to Felix. Other IDs were sent to her by Bell. She forwarded them back. She didn't make any change. The only evidence in the record of making IDs are two pieces. There's three pieces of evidence. One, Felix tells her, here's a copy of something I've made. I'm redoing it. No evidence that she made anything. Counsel, once again, you are not claiming that the evidence is insufficient to sustain the conviction? Correct. I'm claiming they lied about their evidence. So we're here only on basically a claim of prosecutorial misconduct. There's sufficient evidence. She received only probation because of her small role, presumably. And so the only question is, how much more did the government say, if at all, on the topic that you started out with, which is danger, besides the thing that I read aloud? Well, I'll give you a quote when I get back to it. I'll move down the line. The point is, airline safety had nothing to do with what she did, and she didn't put anyone at risk ever, and that's a dishonest argument. That's our position. And the record evidence of that is she flew once to Costa Rica in 2016 on her own personal ID. She was charged with conspiracy, right? Correct. So all the incidences of using those false tickets can be charged to her? Yes. The point is they can't lie. And the argument was that they violated security. They, as a group, endangered the public by having – by allowing people to pose as people they were not. No. I think the they in that sentence is her and the single codefendant in this case, and that's the context of it. And she had nothing to do with that. So she's not a they, and that's not a fair argument. Well, that could have been pointed out. That's a good response. That can be pointed out in the responding argument that, well, that – they said this, but it was – Right. I'm not denying that trial counsel could have done a better job. I'm only here, and I'll get to my second lie, to say that the people at that table at this trial lied to a jury and lied to a district judge, and they take offense at it. They told this jury it was critical that you have to have the exact ID number. The whole thing. This is a remarkable rephrasing of the actual testimony, right? What? I lost you on what you're trying – the point, Your Honor, honestly. You just gave us a nice, colorful, inflammatory quotation, but that's not the actual language that was used. It was a sum-up question that included all of the information needed to fill out the form online to get the fraudulent ticket, right? Now, you've made a big deal in your brief about the difference between having a real employee's identification number versus a fake identification number, right? Right. And the word critical was used in that wrap-up question. But what I'm trying to understand is why that made any difference at all. And if it was so important at trial, why doesn't defense counsel point it out? Again, I'm going to give you the defense counsel the bad job. It's not true that it was critical or even material. The evidence, which is not disputed – It was essential to actually go – to give some information to go through the on-screen prompts, right? Any information in any combination. Information, yes. Any information. Some information had to be provided. So my concern, counsel, is that if you're dealing with the ambiguous testimony, the question did not spell out the difference between real information and fake My point is that in every trial that I've ever been a part of, there is room to go back and second-guess the ambiguous points. And we count on the trial process and counsel to focus in on the ones that are important. That may well be true, but we also rely on prosecutors to tell the truth. And the citation I'm giving you right now is to ER 22, page 220 in volume 3. They had the question, the scripted prepared question, was the witness saying that the employee number, the date of hire, and even without a verification code was critical information to book. Right. And that's not true. Any – any – No, you're – you're playing games with the difference between employee identification information being some employee's correct information versus some incorrect information. Right? And that just wasn't spelled out in the question. The employee number was irrelevant to accessing any of these tickets, and they told the jury opposite. It was irrelevant. It had nothing to do with it. The only thing you need was the pass code that they published publicly. And how did this make the slightest difference in the outcome for your client? Well, that's why I'm arguing about the constitutional standard. At a certain level, and this is what the Supreme Court reemphasized last week, when that party lies and deprives someone of a fair trial, you get a do-over because we don't countenance it. We don't excuse it. When they tell the jury the third lie, since I'm running out of time, that they told was that her badge, the Miller badge, is identical, so she made all the templates. They told the district court it matched precisely to seek an enhanced sentence, and those are false. And you're either unique or not unique. You're either identical or you're not identical. You're pregnant or not pregnant. They, again, lied to the jury and lied to the district judge. They weren't identical. The Miller template does not come from the so-called Ferguson template. But, again, they told something else to the fact finder. And the last thing they did, and the last thing I'll say, is they used Hubbard-Bell's guilty plea as substantive evidence to say he pled guilty and he's the two he pled guilty to conspiring with. That's the substance of it, and those citations we have in our brief. But that's just not fair. You're down to two minutes. Do you want to say something? Yeah, I'll finish my sentence, Your Honor. Thank you. I appreciate that. What White stands for is just the whole idea, is that to represent the United States is an awesome power, and that when they, throughout a trial, make intentional scripted misstatements to improve their case, it's the court's job to say, that's not cricket, even if they had a strong case. And if the answer only is, well, we think she was guilty anyway, then fair trials are illusory, because we just make them stand up and we don't care about the honesty. And I think starting with Mooney to Berger to Darden to White last month, honesty and not misleading the jury matters, and it should matter to this court. I'll reserve. Good morning, and may it please the Court. Brendan Gantz representing the United States. Ms. Ferguson received a fair trial, and this court should affirm her convictions. Her various unpreserved claims do not establish plain error, or even that any prosecutorial misconduct occurred. Ms. Ferguson's principal contention concerning the evidence of materiality is wrong on the facts and also simply ignores the legal standard for materiality set forth in this court's precedents. I don't think there is now or ever has been a genuine dispute in this case about materiality properly understood. And I want to underscore, given some of the rhetoric we've heard this morning, that Ms. Ferguson's arguments simply rely on distortions of the trial record. For example, it is not disputed that Ms. Ferguson used the employee ID number of a MESA pilot to take the two flights that her counsel mentioned that she took early on in the scheme, and that later on when she made the fake badges, including a fake ID badge that showed herself as MESA crew, she used the same employee ID number. It is also not disputed as to the critical information that needed to be entered into the SPIRT portal that in order to book a ticket through that portal, a person had to select an airline affiliation from a drop-down menu. A person had to select from a drop-down menu that they were either a pilot or a flight attendant. They had to enter a verification code. What did she do that one time she used the ticket? She booked it through the SPIRT portal. What did she identify herself as? The employee ID number that she used, which is what we have, is the employee ID number of a MESA pilot named Tori Thial, who testified at trial. I didn't realize that there's a separate prompt to put pilot or flight attendant. That's right. Did she enter pilot? I don't know that the exhibit that we have tells us what she entered in that specific drop-down. We do have that she entered the employee ID number of a MESA pilot. And she would have had to select as well an airline affiliation and enter a verification code that the portal said was provided by your airline. My only factual question is it does seem that all those IDs do look a little different. And so your friend on the other side says that they're not the same. There are noticeable differences. What are we to do with that? Well, Your Honor, what the government argued at trial was that the IDs that Ms. Ferguson made, which are at pages 800 to 806 of the excerpts of record, looked identical to the badge that was recovered from Alicia Miller, who was one of the fraudulent flyers who flew with a fake ID badge. And if you look at those documents, and they're both in the record, the court can go and look at them themselves, as the jury was able to. The government would submit that they do look identical. Now, obviously, a fake badge for somebody who is, you know, for Alicia Miller is not going to be exactly identical to a fake badge for different people that Ms. Ferguson was making fake badges for. And what we're looking at with Alicia Miller's badge is a badge that was printed. It was finished and printed. And Mr. Felix Ukwu, who printed the badges, testified that he had some difficulty getting the ones that Ms. Ferguson created to look like a real MESA ID badge. There may have been some minor adjustments. But the court could look at those badges for itself. The jurors could look at those badges for themselves and make a determination as to whether the prosecutor's argument was correct that you can tell that one came from another. And we would submit that those badges do, in fact, look extremely similar and that the prosecutor's inference was correct. Now, in addition, that was not the only evidence. No problem. That was not the only evidence presented on this point. An FBI agent testified that badges that appeared to have been made from Ms. Ferguson's template were produced and were confiscated by the airlines and law enforcement. The defendants cross-examined that FBI agent. They did not challenge that testimony. MESA's operations security director testified that one of the fake badges that Ms. Ferguson sent to Mr. Felix Ukwu was actually produced and confiscated, and I don't believe the defendants have challenged that testimony. So there was voluminous evidence that Ms. Ferguson did, in fact, help create these fake badges and that they were presented and confiscated by the airlines and by law enforcement. In fact, the whole reason that we have a picture of Alicia Miller's badge is because it was included in a guide that MESA Airlines made to help gate agents distinguish between the fake IDs that were being created and a real MESA ID. And ultimately, MESA had to go even further and rebadge all of their 3,500-some employees in order to stop this fraud, which did stop the fraud. So that shows how big of a problem these fake badges became after the spirit policy change went into place and that the airlines were, in fact, being presented with these IDs and needed to take measures to address it. Ms. Ferguson's other contentions, which are similarly unpreserved and meritless, involve brief references by prosecutors to other evidence, specifically a stipulation about Hubbard Bell's role that was introduced in the defense case, and uncontroverted testimony regarding certain dangers posed by the defendant's conduct here that are not presented by legitimate buddy or companion passes. Neither contention establishes prosecutorial misconduct, let alone plain error, and Ms. Ferguson does not even contend that either of these purported errors by itself affected her substantial rights. It's a little hard to see physical danger to the public here. Would you agree? Well, the evidence was that the danger that was presented by the defendant's conduct here was that when a pilot or a flight attendant flies on another airline, airline crew is aware that a person who is traveling on their plane who's a pilot or a flight attendant, granted, from another airline, but because pilots and flight attendants receive the same safety-focused training, in the event of an emergency, those pilots and flight attendants from the airline that's flying would look to those passengers to assist. How often does that happen? Well, airline emergencies thankfully don't happen too often, but of course they can happen, and here we have people who were traveling with fake badges that identified themselves as crew. That presents clear dangers in terms of what the crew of that airline would look to them for in the event of an emergency. That sounds pretty speculative. Well, it was presented in the testimony from the pilots and flight attendants who testified, and I don't believe the defendants controverted that testimony. Now, the government also presented evidence to show that the danger that was posed by the defendant's conduct here was limited. The government elicited evidence that airline travelers would have also been vetted by the government, and the government asked witnesses, did the government ever raise security red flags about any of these travelers, and the witness said no. The government also elicited testimony that there was a separate process for a pilot jump seat for one of the jump seats that's actually in the cockpit, and so these travelers wouldn't have been in the cockpit. These were cabin jump seats, and the government made all of that clear to the jury, showing the limited and qualified but still real nature of the security threat that was posed by the defendant's conduct, and some brief references to that in the course of a closing that was otherwise focused on the other harms created by the defendant's conduct and all the evidence that showed that Ms. Ferguson and Mr. Felix Ukwu were involved in this conspiracy, most powerfully, of course, their involvement in the creation of the fake badges. In the context of those 40 pages of closing and rebuttal arguments, it was not improper for the government to make some brief references to that uncontroverted testimony. If the Court has no further questions, we'll rest on our arguments and the arguments made in our briefs. Thank you, Your Honors. Thank you, Counsel. Thank you, Your Honors. I'll be brief. One, I just want to clarify a few factual points. Both this Court and the government said she entered, she made, she entered the portal. There's no evidence of that whatsoever. The evidence is that someone booked her a ticket, and Willie Harvey described how Hubbard Bell made the ticket reservations in a companion case. There's no evidence one way or the other that she ever logged on to any computer, made anything, so the idea that we so casually say what she entered is bereft of any evidence at all. A ticket was booked for her. Two, same evidence. There's no evidence that she made any badges. Again, look at Exhibits 19 and 23. She gets a copy set. She forwards the same set. It's the same IDs. So there's no making. It's the same date. It's an hour later. So she's not making anything. Exhibit 27 is Felix saying, I'm making the IDs. I'm paraphrasing, Your Honor, for rhetorical effect. But look at 27. Look at these exhibits. She didn't make anything. He asked her to buy a printer. She returns the money. He buys the printer. There's no evidence she made anything, printed anything. She forwarded stuff. Let's stick with the evidence they introduced. Let's be honest about the evidence. Three, I think the time is up if you want to wrap up. The two things I'll say to wrap up is I think the FBI agent said they seized one single ID. I don't know where they're getting hundreds. I'd ask to look at that evidence again. And the idea that the purported danger, besides being speculative, has anything to make it more likely or not that the charged crimes were committed, it's completely irrelevant. It's emotional and prejudicial. It serves no purpose. Thank you for your time, Your Honor. Thank you, Counsel. The court is in recess until this afternoon.
judges: GRABER, Hamilton, BUMATAY